UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

CHRIS SWAIN,

  Plaintiff,                                          CASE NO.:

v.

VERIZON COMMUNICATIONS INC.,

  Defendant.

_____/

**COMPLAINT**

COMES NOW, Plaintiff, Chris Swain, by and through the undersigned counsel, and sues Defendant, Verizon Communications Inc. ("Verizon"), and in support thereof respectfully alleges violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA").

**INTRODUCTION**

1. The TCPA was enacted to prevent companies like Verizon from invading American citizen's privacy and to prevent abusive "robo-calls."

2. "The TCPA is designed to protect individual consumers from receiving intrusive and unwanted telephone calls." *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740 (2012).

3. "Senator Hollings, the TCPA's sponsor, described these calls as 'the **\*1256** scourge of modern civilization, they wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone out of the wall." 137 Cong. Rec. 30, 821 (1991). Senator Hollings

presumably intended to give telephone subscribers another option: telling the autodialers to simply stop calling." *Osorio v. State Farm Bank, F.S.B.*, 746 F. 3d 1242 (11th Cir. 2014).

4. According to the Federal Communications Commission (FCC), "Unwanted calls and texts are the number one complaint to the FCC. There are thousands of complaints to the FCC every month on both telemarketing and robocalls. The FCC received more than 215,000 TCPA complaints in 2014." *Fact Sheet: Wheeler Proposal to Protect and Empower Consumers Against Unwanted Robocalls, Texts to Wireless Phones*, Federal Communications Commission, (May 27, 2015), https://apps.fcc.gov/edocs_public/attachmatch/DOC-333676A1.pdf.

## JURISDICTION AND VENUE

5. Jurisdiction and venue for purposes of this action are appropriate and conferred by 28 U.S.C. § 1331, Federal Question Jurisdiction, as this action involves violations of the TCPA.

6. Subject matter jurisdiction, federal question jurisdiction, for purposes of this action is appropriate and conferred by 28 U.S.C. § 1331, which provides that the district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States; and this action involves violations of 47 U.S.C. § 227(b)(1)(A)(iii). See *Mims v. Arrow Fin. Servs., LLC*, S.Ct. 740, 748 (2012) and *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1249 (11th Cir. 2014).

7. The alleged violations described herein occurred in Virginia Beach, Virginia. Accordingly, venue is appropriate with this Court under 28 U.S.C. §1391(b)(2),

as it is the judicial district in which a substantial part of the events or omissions giving rise to this action occurred.

## FACTUAL ALLEGATIONS

8. Plaintiff is a natural person, and citizen of the State of Virginia, residing in Virginia Beach.

9. Plaintiff is the "called party." See *Breslow v. Wells Fargo Bank, N.A.*, 755 F. 3d 1265 (11th Cir. 2014) and *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242 (11th Cir. 2014).

10. Defendant, Verizon, is a corporation which was formed in Delaware with its principal place of business located at 1095 Avenue of the Americas, New York, NY 10016 and which conducts business in the State of Virginia through its registered agent, CT Corporation System, located at 4701 Cox Rd, Suite 285, Glen Allen, VA 23060.

11. Verizon called Plaintiff approximately three hundred (300) times since 2013, in attempting to reach individuals unknown to Plaintiff, including but not necessarily limited to, a "Mr. Costano" and a "Melinda Saad."

12. Upon information and belief, some or all of the calls Verizon made to Plaintiff's cellular telephone number were made using an "automatic telephone dialing system" which has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator (including but not limited to a predictive dialer) or an artificial or prerecorded voice; and to dial such numbers as specified by 47 U.S.C § 227(a)(1) (hereinafter "autodialer calls"). Plaintiff will testify that he knew it was an autodialer because of the vast number of calls he received and because he heard a pause

when he answered his phone before a voice came on the line and he received prerecorded messages from Verizon.

13.  Plaintiff is the subscriber, regular user and carrier of the cellular telephone number (757) ***-6589, and was the called party and recipient of Defendant's calls.

14.  Beginning on or about 2013, Verizon began bombarding Plaintiff's cellular telephone (757) ***-6589 in an attempt to reach individuals known only as "Mr. Costano" and "Melinda Saad."

15.  Plaintiff does not currently know, nor has ever known, any individuals by the name of "Mr. Costano" or "Melinda Saad."

16.  Plaintiff does not currently have any account or business dealings with Verizon.

17.  Plaintiff began receiving automated calls and prerecorded messages to his cellular telephone from Verizon in 2013 attempting to alert individuals unknown to Plaintiff about various changes to their accounts such as service stoppage, service visits and past due accounts.

18.  Initially after the calls began, in approximately 2013, Plaintiff would answer calls from Verizon and inform agents that he was not the individual(s) they were looking for and to please stop calling.

19.  The calls never ceased though and on several other occasions throughout the years Plaintiff answered and spoke to agents from Verizon explaining he was not the individual(s) Verizon was seeking and to stop calling. Normally Verizon's agents would

apologize and state that Plaintiff's phone number would be removed from the system, however despite Verizon's agents reassurances, the calls continued unabated.

20. On one occasion, on or about December 2016, Plaintiff answered a call and spoke to an unknown agent of Verizon and informed said agent that they were calling the wrong number, that Plaintiff does not know the person they were calling for and to please stop. The agent informed Plaintiff that his number would be removed, however the calls continued.

21. Due to the length of time, as well as the volume received, Plaintiff was not able to keep track of every call received from Verizon, however attached hereto as **Exhibit A** is a small sampling of the calls Plaintiff received from Verizon.

22. Verizon has a corporate policy to use an automatic telephone dialing system or a pre-recorded or artificial voice to individuals just as they did to Plaintiff's cellular telephone in this case.

23. Verizon has a corporate policy to use an automatic telephone dialing system or a pre-recorded or artificial voice, just as they did to the Plaintiff's cellular telephone in this case, with no way for the consumer, or Verizon, to remove the number.

24. Verizon's corporate policy is structured so as to continue to call individuals like Plaintiff, despite these individuals explaining to Verizon they do not wish to be called.

25. Verizon has numerous other federal lawsuits pending against them alleging similar violations as stated in this Complaint.

26. Verizon has numerous complaints against it across the country asserting that its automatic telephone dialing system continues to call despite being requested to stop.

27. Verizon has had numerous complaints against it from consumers across the country asking to not be called, however Defendant continues to call these individuals.

28. Verizon's corporate policy provided no means for Plaintiff to have Plaintiff's number removed from Verizon call list.

29. Verizon has a corporate policy to harass and abuse individuals despite actual knowledge the called parties do not wish to be called.

30. Not one of Verizon's telephone calls placed to Plaintiff were for "emergency purposes" as specified in 47 U.S.C. § 227(b)(1)(A).

31. Verizon willfully and/or knowingly violated the TCPA with respect to Plaintiff.

32. From each and every call placed without express consent by Verizon to Plaintiff's cell phone, Plaintiff suffered the injury of invasion of privacy and the intrusion upon his right of seclusion.

33. From each and every call without express consent placed by Verizon to Plaintiff's cell phone, Plaintiff suffered the injury of the occupation of his cellular telephone line and cellular phone by unwelcome calls, making the phone unavailable for legitimate callers or outgoing calls while the phone was ringing from Verizon's call.

34. From each and every call placed without express consent by Verizon to Plaintiff's cell phone, Plaintiff suffered the injury of unnecessary expenditure of his time. For calls he answered, the time he spent on the call was unnecessary as he repeatedly asked for the calls to stop. Even for unanswered calls, Plaintiff had to waste time to unlock the phone and deal with missed call notifications and call logs that reflect the unwanted calls. This also impaired the usefulness of these features of Plaintiff's cellular phone, which are designed to inform the user of important missed communications.

35. Each and every call placed without express consent by Verizon to Plaintiff's cell phone was an injury in the form of a nuisance and annoyance to the Plaintiff. For calls that were answered, Plaintiff had to go to the unnecessary trouble of answering them. Even for unanswered calls, Plaintiff had to waste time to unlock the phone and deal with missed call notifications and call logs that reflected the unwanted calls. This also impaired the usefulness of these features of Plaintiff's cellular phone, which are designed to inform the user of important missed communications.

36. Each and every call placed without express consent by Verizon to Plaintiff's cell phone resulted in the injury of unnecessary expenditure of Plaintiff's cell phone's battery power.

37. Each and every call placed without express consent by Verizon to Plaintiff's cell phone where a voice message was left which occupied space in Plaintiff's phone or network.

38. Each and every call placed without express consent by Verizon to Plaintiff's cell phone resulted in the injury of a trespass to Plaintiff's chattel, namely his cellular phone and his cellular phone services.

39. As a result of the calls described above, Plaintiff suffered an invasion of privacy. Plaintiff was also affected in a personal and individualized way by of frustration and anxiety. Due to the constant calls from Verizon despite informing them repeatedly they are calling the wrong number, Plaintiff will now no longer answer any unknown calls for fear of being frustrated with another Verizon automated call.

## COUNT I
### (Violation of the TCPA)

40. Plaintiff fully incorporates and realleges paragraphs one (1) through thirty-nine (39) as if fully set forth herein.

41. Verizon willfully violated the TCPA with respect to Plaintiff, specifically for each of the auto-dialer calls made to Plaintiff's cellular telephone after Plaintiff notified Verizon that Plaintiff wished for the calls to stop

42. Verizon repeatedly placed non-emergency telephone calls to Plaintiff's cellular telephone using an automatic telephone dialing system or prerecorded or artificial voice without Plaintiff's prior express consent in violation of federal law, including 47 U.S.C § 227(b)(1)(A)(iii).

**WHEREFORE**, Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Verizon for statutory damages, punitive damages, actual damages, treble damages, enjoinder from further violations of these parts and any other such relief the court may deem just and proper.

Respectfully submitted,

/s/

Hyatt B. Shirkey, Esq. (VSB#80926)
Hyatt Browning Shirkey Law Firm
3735 Franklin Rd. S.W., Suite 251
Roanoke, VA 24014
**Office**: (540) 324-9288
**Fax:** (540) 986-2199
**E-Mail:** Hyatt@hbsesqfirm.com
Attorney for Plaintiff Chris Swain